underwriter, to be defended on the same grounds, and determined by the observance of the same rules, and the application of the same legal principles. It would be an anomaly indeed, if, in a case where it was admitted, the owner could recover against the carrier for the use of the underwriter, the latter having paid the loss, and suing directly in his own name in admiralty, as he may, thus standing, as we have seen, substantially in the place of the owner, could not recover. Such a result would be extremely inconsistent and illogical. The carrier has all the privileges and immunities to which he is justly entitled when he is allowed to interpose the same defenses against the underwriter which he could against the owner, no more nor less, however. No privity of contract existing, as has been shown, he cannot be permitted to inquire into the equities which may have existed between the underwriter and the owner, and thus divert the issue to be tried from the question of his unlawful acts or negligence to that of the liability or non-liability of the underwriter to the owner. What he must negative, is his liability to the owner, not that of the insurer to the owner. The exceptions will be overruled.

---

### AMBASSADOR, The, (KEYS v.)

[See Keys v. The Ambassador, Case No. 7,747.]

---

### Case No. 271.

### In re AMBLER.

[8 Ben. 176.][1]

District Court, S. D. New York. June, 1875.

PREFERENCE—TAXES—DEBT DUE TO A STATE.

A debt due from a bankrupt to a state other than the state in which the bankruptcy proceedings are pending, for taxes, is not entitled to a preference under the fifth subdivision of section 5101, Rev. St.

In bankruptcy. The register in this case certified to the court that, at a third general meeting of the creditors [of Andrew F. Ambler] herein, a deposition for proof of debt was presented in behalf of the state of Texas, amounting to $700.59, for taxes levied and assessed against the firm of Ambler & Mason, in accordance with the laws of the state of Texas; and that it was demanded that, in the order for a dividend, this claim should be admitted to a preference and be first paid in full, as a claim entitled to such preference under the fifth subdivision of section 5101, Rev. St. And the register certified the question to the court, with the following opinion:

"It is on the strength of the judgment of the court in U. S. v. Herron, [20 Wall. (87 U. S.)

251,] that it is contended that this claim is entitled to priority. The question in that case was, whether a debt due to the United States from the bankrupt on a bond executed by the bankrupt, as surety for a defaulting revenue officer of the United States, was discharged by a certificate of discharge of the bankrupt under the bankrupt act. The court holds that, the United States being the sovereign authority and not being named in any of the provisions of the act providing for the discharge of the bankrupt from his debts, nor in any of the required proceedings which lead to that result, a debt due to the United States is not within the operation of the act, and is not discharged by the discharge of the bankrupt in proceedings in bankruptcy. And the court, in discussing the question in the case, makes use of the following expressions: 'Attempt is made in argument to show that the preference given to debts of the United States does not exclude such debts from the operation of the certificate of discharge, because such debts are not named in the proviso annexed to the description of the fifth class of claims entitled to priority and full payment in preference to general creditors; but the court is not able to concur in the proposition, as it is quite clear that the proceedings in bankruptcy would very much embarrass tax-collectors without a saving clause in that behalf, and to that end it was provided that "nothing contained in this act shall interfere with the assessment and collection of taxes by the authority of the United States or any state." Consequently taxes, whether federal or state, may be collected in the ordinary mode; but if not collected, and the property of the bankrupt passes to and is administered by the assignee, the taxes are then entitled to the priority and preference provided in the same section of the bankrupt act. Nothing, therefore, can be inferred from that proviso inconsistent with the proposition that the sovereign authority is not bound by the provisions of the bankrupt act, unless therein named.' "

It is on these expressions, that, on behalf of the state of Texas, reliance is placed that this claim for taxes is entitled to priority.

The register does not understand the language of the court as declaring, in the case where the state other than that in which the proceedings in bankruptcy are pending has failed to collect taxes due to the state from the bankrupt, that the proviso to the fifth sub-division of the section regulating these preferences, that nothing contained in the Act shall interfere with the assessment and collection of taxes by the authority of the United States, or of any state, creates a preference in favor of the state to which such taxes may be due. To go beyond giving a preference to taxes due to the state in which the proceedings in bankruptcy are pending, might open the door to very numer-

[1][Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

-ous claims for preferences. The Act does not prevent the state to which the taxes are due from enforcing the claim of the taxes for taxes by levy or distraint, or by such other means or process as the laws of the state may provide; and this notwithstanding the debtor may have obtained his discharge in bankruptcy. To refuse to give the claim a preference is not to interfere with the collection of the tax. The debt may be proved in the proceedings in bankruptcy, but within the jurisdiction of the state it is not discharged by the certificate of discharge. But the only priority and preference in the distribution of the assets of the estate in bankruptcy of the bankrupt. given by the section in question of the statute, to taxes due to a state, is the priority and preference given by the third sub-division of the section, to taxes and assessments made under the laws of the state in which the proceedings in bankruptcy are pending.

BLATCHFORD. District Judge. I concur in the conclusion of the register, that the claim in question is not entitled to a prefer-ence or priority in payment.

## Case No. 272.

### AMBLER v. CHOUTEAU et al.

[3 Cent. Law. J. (1876) 333.]

Circuit Court, E. D. Missouri.[1]

EQUITY PLEADING—MULTIFARIOUSNESS — JOINDER OF PARTIES—PARTNERSHIP.

[1. A bill by an inventor, alleging a fraudulent sale of his patent rights. which does not clearly show whether the relief prayed for is that the sale be canceled, and the patent restored, or that the sale be confirmed, and the buyer forced to account for the profits, is bad on demurrer.]

[See note at end of case.]

[2. Where a patent is issued to a partnership, one partner cannot maintain a bill against an alleged fraudulent purchaser of the invention without making the other partner a party to the record, although such other partner shared in the alleged fraud. Ambler v. Whipple, 20 Wall. (87 U. S.) 546, distinguished.]

[See note at end of case.]

[In equity. Bill by Augustine I. Ambler against Charles P. Chouteau, the Missouri Liquid Fuel & Illuminating Company, and others, alleging a fraudulent sale of complainant's invention to respondents. Heard on demurrer to the bill. Demurrer sustained. An appeal was subsequently taken to the supreme court, where this decision was affirmed. 107 U. S. 586, 1 Sup. Ct. 556.]

Before DILLON, Circuit Judge, and TREAT, District Judge.

DILLON, Circuit Judge, delivered an oral opinion, as follows, (TREAT, District Judge, concurring:)

[1][Affirmed by supreme court in 107 U. S. 586, 1 Sup. Ct. 556.]

In this case there is a demurrer to the bill of complaint. The case is a very important one, if it is ever brought to a hearing on all the charges made in the bill. There is a demurrer on various grounds. One is, that the individual corporators, or certain individual corporators, have been joined as defendants, with the corporation, the "Missouri Liquid Fuel & Illuminating Co." Another is that it appears from the bill, that there was an agreement between the plaintiff, Ambler, and one Whipple, giving the latter the entire control of the patent, the complete, jus disponendi, and that what is charged as a fraud here, is simply acts that Whipple, by virtue of this contract, had authority to do, namely, to control and sell the patent in which the plaintiff claims an interest. Another ground is that, although the bill is based upon fraud, and is profuse in general charges of fraud, nevertheless the facts stated do not show fraud in the defendants. Another ground is that Whipple & Dickerson are necessary parties to the relief sought in this bill, and are not made parties, either complainant or respondents.

In 1869 the government of the United States, on the 13th of July, granted a patent, known as 92,687, jointly to the complainant, Ambler, and to one Whipple. It seems that Ambler, the complainant here, is the inventor, or claims to be the inventor, of the process mentioned in the patent, which is claimed to be very valuable, and that Whipple was to be the business manager of the concern. They formed a partnership, and their contract provides that Ambler shall go on and perfect his invention; shall get a patent; that all the improvements shall inure to their joint benefit; that Ambler shall keep his hands off when they get a patent, in the way of disposing of it to make it valuable; and, finally, that he shall confine himself to the work of invention, and that Whipple shall do the work of selling, to make it realize money gains. Accordingly that arrangement was made. That is the substance of the contract. Whipple had authority to sell and dispose of it, and was to account to Ambler for one-half the gains. According to the judgment of the supreme court of the United States, which has had before them a controversy between Ambler and Whipple, this man Whipple, believing this to be a very valuable patent, immediately conceived the idea of swindling Ambler out of it; and it does not stand alone in the history of inventions, that the man whose cunning, whose days and nights, are given to the perfecting of the patent, is often swindled out of the proceeds of it, by those more cunning than himself in the ways of the world. According to the opinion of the supreme court of the United States, Whipple, as I have said, conceiving this to be a very valuable patent, immediately set to work by a confederacy with